IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| CINDY M. DABNER, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 17 C 2286 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| | ) | |
| SCOTT PRUITT, Administrator of the United States Environmental Protection Agency, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Cindy M. Dabner filed a five-count *pro se* Complaint, alleging employment discrimination on the basis of age, race, and sex against defendant Environmental Protection Agency ("EPA"). The EPA filed a partial motion to dismiss and to strike the Complaint [17]. For the reasons set forth below, this Court grants the motion.

**Background**

The following facts are taken from the Complaint. (Dkt. 1). Plaintiff, Cindy M. Dabner, is a 49-year-old African American woman and veteran of the United States Army. Dabner has worked for the EPA since August 1998. Her most recent position was as a Senior Resource Conservation and Recovery Act (RCRA-C) Hazardous Waste Senior Inspector, Physical Scientist. She has a Bachelor of Science degree in chemistry and a Master of Arts degree in hazardous waste management.

The only defendant served is the EPA, though Dabner names several people in the Complaint as defendants in their individual and official capacity, including Cheryl A. Newton (Regional Assistant Administrator), Gilbur Colston (Supervisory Resources Specialist), Margaret Guerriero (EPA Region 5 Land and Chemicals Division Director), Michael Harris (EPA Region 5

1

Land and Chemicals Division Deputy Director), Gary Victorine (EPA Region 5 Land and Chemicals Division, RCRA C Branch Chief), Allen Mercer (EPA Region 5 Land and Chemicals Division, Program Services Branch Chief), Jose Cisneros (EPA Region 5 Land and Chemicals Division, Remediation and Reuse Branch Chief), and Julie Morris EPA (Region 5 Land and Chemicals Division, RCRA Branch, Compliance Section 2 Chief).

While employed at the EPA, Dabner was enrolled in a graduate program in International Relations at American University in Washington D.C. She alleges that she was dismissed from that program as a result of workplace discrimination. Dabner further alleges that she applied for temporary assignments (details) and promotions within the Land and Chemicals Division, Region 5, and within the broader EPA, but was never selected for those assignments or promotions despite being in good standing. (Dkt. 1, Compl. at ¶ 19). Details within the EPA provide professional development and experience to federal employees, providing an advantage in the hiring process.

Dabner applied to serve on a detail in the Remediation and Reuse Branch where Jose Cisneros served as the Branch Chief, and also served as the selecting official for the Section Chief Supervisor position for the Corrective Action Section within his Branch. Cisneros, with the knowledge and approval of Guerriero, appointed two white men (Michael Beedle and Bradley Grams) to Section Chief Supervisor for a Corrective Action Section at a higher pay and grade for 120 days each without soliciting or giving notice to other eligible employees with similar education and experience. (*Id.* at ¶¶ 22-23). Dabner applied for the position of Section Chief of Corrective Action once the announcement was posted to USAJOBS. Human Resources determined that Dabner was eligible for the position and offered her an interview. Cisneros, Mercer, and Colston interviewed Dabner for the Section Chief position. Cisneros selected Beedle for the position in consultation with Guerriero. Beedle was the Acting Corrective Action Section Chief, during the selection process. (*Id.* at ¶ 28).

2

Dabner had made several complaints to the EPA management about Colston denying Dabner reasonable time to address both formal and informal equal employment opportunity ("EEO") complaints prior to her interview for Section Chief. (*Id.* at ¶ 29). Dabner had filed complaints against Cisneros and Mercer for non-selection for several details and permanent positions to which Dabner had applied prior to her interview for Section Chief. Between 2003 and 2017, Dabner filed fifteen formal EEO complaints against EPA management. (*Id.* at ¶ 31). She alleges that each of her interviewees was aware of her prior EEO activity. (*Id.* at ¶ 26).

Dabner received fully satisfactory performance evaluations in fiscal years 2013 and 2014. (*Id.* at ¶¶ 32-33). Despite these reviews, Morris issued a negative expectation memorandum on October 22, 2014. (*Id.* at ¶ 34). She alleges that none of the white RCRA inspectors under supervisor Victorine received a negative expectation memorandum within ninety days of receiving fully satisfactory or higher performance ratings the preceding two years. (*Id.*). Morris was aware that Dabner had filed prior EEO complaints against Morris and other EPA managers and senior leadership. (*Id.* at ¶ 35). Dabner alleges that Morris mitigated the workload and backlog of white employees assigned to her section to avoid negative reports and adverse personnel actions against white employees. Morris did not give Dabner the same consideration or assistance. (*Id.* at ¶ 36). Morris issued a performance expectation memorandum to Dabner for refusing to accept a portion of Beedle's workload once he was promoted to Section Chief. (*Id.* at ¶ 37).

Dabner alleges that Harris and Guerriero transferred her to a position of lower seniority upon her return from one-year military deployment overseas. She further alleges that a white male RCRA-C Inspector, Daniel Chachakis, always returned to his former position upon returning from deployment. (*Id.* at ¶ 38). Both Dabner and Chachakis were hired as RCRA-C Inspectors within the Land and Chemical Division around the same time. (*Id.*).

Dabner claims that Harris, Guerriero, Victorine, and Morris retaliated against her by denying

3

her future EPA professional development opportunities because she asked to step down as LEAN coordinator to meet performance expectations. (*Id.* at ¶ 39). On November 19, 2014, Dabner alleges that Harris, Guerriero, Victorine, Morris, and Cheryl Newton did not select Dabner to participate in the EPA Mid-Level Leadership Development Program (MLLDP) to which Dabner had applied every year since 2009. According to Dabner, defendants believed the MLLDP would take too much of her work time. (*Id.* at ¶ 40). Dabner claims these actions were discriminatory and retaliatory based on her age, gender, and race. She further claims the defendants created a hostile work environment.

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering the motion, the Court accepts as true all well pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive dismissal, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim must be plausible rather than merely conceivable or speculative, meaning that the plaintiff must include enough details about the subject-matter of the case to present a story that holds together. But the proper question to ask is still *could* these things have happened, not *did* they happen." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826–27 (7th Cir. 2014) (emphasis in original) (internal citations omitted).

Pursuant to Rule 12(f), the Court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The court has "considerable discretion in deciding these issues and, as a general matter, motions to strike... under Rule 12(f) are disfavored." *Seoud v. E.F. Hutton & Co., Inc.,* 720 F. Supp. 671, 686 (N.D. Ill. 1989). "As such, the standard

employed to decipher pertinence and materiality questions is whether or not the 'allegations have no possible relation to the controversy.'" *Id.*

**Discussion**

Defendants move to dismiss Dabner's claims to the extent they rely on 42 U.S.C. §§ 1981 and 1983 because Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. General Services Admin.*, 425 U.S. 820, 835 (1976). Defendants move to dismiss Count II for age discrimination and Count IV for hostile work environment for failure to state a claim. Defendants move to strike Dabner's request for punitive damages and attorney's fees. Defendants further request the Court strike Dabner's request for compensatory damages and for a jury trial because neither is available under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621.

Dabner concedes that the Court should strike her allegations based on sections 1981 and 1983, the punitive damages request, and the compensatory damages and jury trial request under the ADEA. Therefore, those claims and allegations are stricken. The Court also strikes Dabner's request for attorney's fees, over her objection, because she is *pro se*. This Court may revisit the issue of attorney's fees if Dabner retains counsel, however, at this time the request is immaterial to her complaint.

The Court now turns to the motion to dismiss Count II and Count IV for failure to state a claim upon which relief can be granted. In Count II, Dabner alleges discrimination based on her age when she was not selected to participate in the MLLDP despite Dabner having applied to the program for several consecutive years. The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To state a claim for age discrimination under the ADEA a plaintiff must ultimately "prove by a preponderance of the

5

evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBI Fin. Servs., Inc.,* 557 U.S. 167, 177–78 (2009).

To illustrate, *Kirley v. Bd. of Educ. of Maine Twp. High Sch. Dist. 207*, the plaintiff accused the employer of age discrimination and retaliation in an email, stating: "This year you asked me how old I was. Last year you asked me when I was going to retire. I find this offensive." No. 13 C 1706, 2013 WL 6730885, at *8 (N.D. Ill. Dec. 20, 2013) (Holderman, J.). The district court found that this accusation was insufficient to state a claim for age discrimination where there was no other factual allegations to support the claim. *Id.* That court explained the plaintiff "has not alleged that any decision maker made any comments about her age or her retirement plans around the time of the alleged adverse employment actions… or in reference to these alleged adverse employment actions, nor has she alleged any other factual allegations supporting her conclusory allegation that [the defendant] discriminated against her based on her age." *Id.*

Here, Dabner has not alleged any facts from which this Court could conclude that her age played a role in her supervisors' failure to select her for the MLLDP. She also has not sufficiently alleged an adverse employment action in the rejection for participation in MLLDP. "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir.1996). An adverse job action includes only those actions that cause "a materially adverse change in the terms or conditions of her employment." *Spring v. Sheboygan Sch. Dist.,* 865 F.2d 883, 885 (7th Cir.1989). "A materially adverse change might be indicated by a termination in employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993). At most, Dabner speculates that by not participating in the MLLDP she may not be as qualified for future positions or advancement, which is insufficient to

6

show a materially adverse change in the conditions of her employment. *Cf. Caroline Zuno v. Catholic Bishop of Chicago*, No. 06 C 223, 2008 WL 4876934, at *4 (N.D. Ill. Aug. 6, 2008) (Guzman, J.) (denying summary judgment because there was no genuine issue of fact as to whether the plaintiff's non-attendance at professional development events resulted in significantly diminished material responsibilities for her position). This Court therefore dismisses Count II without prejudice for failure to state a claim for age discrimination.

In Count IV, plaintiff alleges that defendants subjected her to a hostile work environment. Only a "hellish" workplace is actionable as a hostile work environment. *Rogers v. City of Chicago,* 320 F.3d 748, 752 (7th Cir.2003). In order to survive dismissal, Dabner must allege that because of her EEO activity, she was subjected to severe or pervasive conduct that created a "subjectively and objectively offensive" work environment, and that there is a basis for employer liability. *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 912 (7th Cir.2010). The factual allegations on this count are quite vague. Dabner claims that she was subjected to continual and repeated harassment for requesting time to participate in EEO activities. Dkt. 1 at ¶ 54. She does not, however, suggest what form the harassment took or state any allegations to support an inference that it was severe and pervasive. There are no allegations suggesting frequency or if the conduct was physically threatening or verbally abusive or whether it interfered with her work performance. *See Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 552 (7th Cir. 2002) (listing the factors influencing whether the complained of conduct is sufficiently severe and pervasive to be actionable as a hostile work environment). Accordingly, this Court dismisses Count IV without prejudice.

**Conclusion**

Based on the foregoing discussion, this Court grants the EPA's Partial Motion to Dismiss and to Strike [17]. Counts II and IV are dismissed without prejudice.


IT IS SO ORDERED.

        ENTERED:

Dated: October 5, 2017

                                                      SHARON JOHNSON COLEMAN
                                                      United States District Judge