UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CINDY M. DABNER, | ) |
|       Plaintiffs, | ) Case No. 17-cv-2286 |
| v. | ) Judge Sharon Johnson Coleman |
| ANDREW WHEELER, Acting Administrator of the United States Environmental Protection Agency, | ) |
|       Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Cindy M. Dabner filed a Complaint alleging discrimination and retaliation by her former employer the U.S. Environmental Protection Agency (the "EPA"). This Court dismissed Dabner's age discrimination and hostile work environment claims and struck Dabner's punitive damages and attorney's fees requests in October 2017. The EPA moves for summary judgment on the remainder of Dabner's claims, arguing that she cannot state a prima facie case of discrimination or retaliation. For the reasons stated herein, this Court grants the EPA's motion for summary judgment [74].

**Background**

The following facts are undisputed. Dabner did not file a response brief or supporting materials as required by Local Rule 56.1(b). Therefore, the Court accepts as true all material facts set out in the EPA's Local Rule 56.1(a) statement. *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009).

Dabner is an African-American woman who began her employment with the EPA in August 1998. Over the years, she held several environmental scientist positions, and in October 2010 she

1

requested a reassignment from the Underground Storage Tank Section. After a 12-month military deployment, at Dabner's request she was reinstated in March 2012 with a reassignment to the RCRA Branch. Dabner retained the same grade level and received a step increase that resulted in increased pay. Dabner volunteered for and was selected as the Land and Chemicals Division's "LEAN Coordinator" in June 2014. The position had a three-year commitment. However, after a few months and a number of conflicts with other volunteers, Dabner quit, citing the demands of her position. Dabner's resignation prompted her supervisor to inform her that the EPA would likely take a closer look at her participation in voluntary activities in the future.

In 2013, Dabner served a four-month temporary detail as a section chief in RCRA Compliance Section 1. When a permanent position for section chief in another branch was announced in July 2014, Dabner applied. She met the minimum requirements for the position and was one of eleven candidates who received an interview. A panel of three interviewers posed the same questions to each candidate and assigned a score to each. Dabner received a total score of 28, behind Jamie Brown (African American male), who received 33 points, and Michael Beedle (white male), who received 40 points.

The panel unanimously chose Beedle as the best-qualified candidate for many reasons, including because he had two years' experience as a staff member doing the same work that he would be managing in that position; he had experience in remediation activities; he held an advanced degree in public health like other successful project managers; he answered the interview questions more completely; and he was able to most effectively relate his abilities and experiences. Dabner was less qualified because she had not done RCRA compliance corrective action project manager work; she did not have strategic planning and goals setting skills or experience at the same level as the best-qualified candidate; and during her interview she did not convey what she wanted to accomplish as section chief or how her experience was relevant.

2

Dabner's work performance for the years 2013 and 2014 was worse than her peers. Dabner did not complete any of her seven assigned inspection reports in 2013, despite having a reduced workload to account for her time on detail. In 2014, Dabner completed four of those outstanding 2013 inspection reports, each almost a year late, and did not complete any of her nine assigned 2014 inspection reports. In contrast, in 2014, the other RCRA Compliance Section 2 inspectors who worked the entire year in the section completed between eight and twenty inspection reports. Dabner received a new supervisor, Julie Morris, in September 2013, who began addressing Dabner's deficient work with her through a series of meetings in 2014. In those meetings, Dabner agreed that she had not completed her assignments. In October 2014, Morris issued a performance expectations memorandum to Dabner that counseled her regarding her minimally satisfactory performance and serious problems managing her caseload. The memorandum also set goals to assist Dabner in addressing her work backlog. It was not discipline and was not accompanied by a change in Dabner's job responsibilities or pay.

Another RCRA Compliance Section 2 employee, Sue Brauer (white female) also had a work backlog in 2013 when Morris became Brauer's supervisor. Similar to Dabner, Morris counseled Brauer regarding her work backlog. By 2014, Brauer had finished all outstanding 2013 inspection reports, plus all 2014 reports and eleven 2014 inspections.

In November 2014, Dabner nominated herself for the Mid-Level Leadership Development Program, a time intensive leadership development program that requires supervisory approval for an employee to participate. Management did not sign off on her participation due to concerns that Dabner was already behind on her routine work and that the substantial time commitment for the program would interfere with her work performance.

This lawsuit is based on a 2014 EEO complaint that alleged race, color, sex, national origin, age, and retaliation. Dabner filed eight other EEO complaints before the operative complaint.

3

**Legal Standard**

Summary judgment is proper when "the admissible evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *McGreal v. Vill. of Orland Park*, 850 F.3d 308, 312 (7th Cir. 2017), reh'g denied (Mar. 27, 2017) (internal citations and quotations omitted); Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where, as here, the non-moving party fails to respond as set forth in Local Rule 56.1(b), the Court does not automatically grant summary judgment, but still reviews the facts and draws all reasonable inferences in the light most favorable to the non-moving party. *See Cracco*, 559 F.3d at 632; *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("the Supreme Court has made clear that even pro se litigants must follow rules of civil procedure."). However, as noted above, the facts presented by the EPA are undisputed.

**Discussion**

*1.     Race and Sex Discrimination*

Dabner alleges that she was discriminated against when she was denied a promotion, counseled regarding her productivity, and not approved for a leadership development program. Contrary to the EPA's contention, the Seventh Circuit recently made clear that it is no longer proper to sort evidence "into 'direct' and 'indirect' piles." *Khowaja v. Sessions*, 893 F.3d 1010, 1014 (7th Cir. 2018) (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). To establish employment discrimination, courts in this Circuit ask "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race [or] sex … caused the … adverse employment action. Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself." *Ortiz*, 834 F.3d at 765.

4

Courts continue to use the familiar *McDonnell Douglas* burden-shifting framework to evaluate the evidence in the record. *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). To establish prima facie discrimination, Dabner has the initial burden to show that: (1) she is a member of a protected class; (2) she performed reasonably on the job in accordance with the EPA's legitimate expectations; (3) she was subjected to an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably by the EPA. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 895 (7th Cir. 2018). If the plaintiff establishes a prima facie case, "then the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *David*, 846 F.3d at 225.

The EPA admits that Dabner is an African-American woman. However, the EPA argues that Dabner cannot show a prima facie case of disparate treatment under *McDonnell Douglas* because she was not satisfying the EPA's legitimate expectations, she was not subject to an adverse employment action, and similarly situated employees outside of the protected class were not treated more favorably.

Here, the undisputed evidence shows that Dabner is unable to establish a prima facie case of discrimination. First, Dabner does not show that she was meeting her employer's legitimate job expectations at the time of the alleged adverse employment action. *See Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1158 (7th Cir. 2014). It is undisputed that Dabner repeatedly received counseling about her work backlog, but did not catch up on her work. Just weeks after receiving a performance expectations memorandum that again addressed the problem of Dabner's work backlog, Dabner nominated herself for a time intensive leadership development program, thereby demonstrating a lack of understanding and commitment to completing her assigned tasks. Dabner also had a series of conflicts with other volunteers for a different program that prompted further concern from her

5

supervisor. *See id.* at 1158–59 (affirming summary judgment where despite repeated warnings, employee continued inappropriate behavior and therefore was not meeting legitimate expectations).

Second, Dabner does not demonstrate that she was subject to an adverse employment action. An adverse employment action must "materially alter the terms and conditions of employment" and not be a "mere inconvenience or an alteration of job responsibilities." *Dass v. Chicago Bd. of Educ.*, 675 F.3d 1060, 1069 (7th Cir. 2012). "Such changes can involve the employee's current wealth, [her] career prospects, or changes to work conditions that include humiliating, degrading, unsafe, unhealthy, or otherwise significant negative alteration in the workplace." *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016).

Dabner's performance expectations memorandum counseled her regarding minimally satisfactory performance and set goals to address her work backlog. No disciplinary action, demotion, loss of pay, or any material alteration of her job responsibilities accompanied the memorandum. *See Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 602 (7th Cir. 2009). Similarly, not receiving approval to participate in a time-intensive leadership course when she was already behind on her required work does not qualify as an adverse employment action. *Id.* Further, Dabner's request for a transfer from the Underground Storage Tanks cannot be an adverse employment action. A lateral transfer, especially one requested by Dabner, to a position that does not involve a demotion in form or substance is not a materially adverse employment action. *See Madlock v. WEC Energy Grp., Inc.*, 885 F.3d 465, 471 (7th Cir. 2018); *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996). Finally, Dabner alleges that her unsuccessful application for a permanent supervisory position is an adverse action. While the loss of career advancement can constitute an adverse employment action, the evidence in the record here does not support such a conclusion. *See Lewis v. City of Chicago*, 496 F.3d 645, 654 (7th Cir. 2007). In fact, despite recorded complaints

regarding her performance, Dabner does not set forth evidence demonstrating that by not receiving this promotion she suffered any material changes to her employment.

Finally, Dabner does not put forth any evidence that similarly situated employees outside the protected class received more favorable treatment. Dabner identifies Sue Brauer as a female employee who also had a work backlog and alleges that Brauer did not receive a performance expectations memorandum. It is undisputed that Brauer also received counseling from the same supervisor as Dabner regarding her 2013 work backlog. However, unlike Dabner, during 2014, Brauer finished all outstanding 2013 inspection reports, plus all 2014 reports and eleven 2014 inspections. In contrast, Dabner still had a backlog of 2013 inspection reports and was not current on her 2014 reports or inspections. As a result, Brauer is not a similarly situated comparator. *See Khowaja*, 893 F.3d at 1016.

Accordingly, Dabner cannot establish a prima facie case of race discrimination, and this Court need not reach the question of whether the EPA's proffered reason for Dabner's non-selection for promotion is pretextual. *See Contreras v. Suncast Corp.*, 237 F.3d 756, 761 (7th Cir. 2001). Nevertheless, the record supports that the EPA's proffered reason that Dabner was not the best candidate. Dabner does not point to any evidence to show that she was better, or even equally, qualified for the section chief position. *See Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 893 (7th Cir. 2016). The three interview panelists unanimously chose Beedle as the most qualified candidate, and Brown as the second-most qualified. Dabner did not interview as well, scoring 12 points lower than Beedle and 5 points lower than Brown. The panel found that she not able to communicate her experience or goals for the position as effectively as the better-qualified candidates, and she did not have the experience and qualifications that the panel determined were best suited for the job. As such, the evidence does not support that the EPA promoted someone outside of the protected class who was not better qualified for the position. *Id.*

7

Similarly, although also not adverse actions, Dabner does not show that the reason given by EPA for why she received a performance expectations memorandum was a lie. The EPA informed Dabner that the purpose of the memorandum was to address and help alleviate her significant work backlog, and it is undisputed that Dabner admitted that she was behind in her work. Likewise, Dabner set forth no evidence to show that the EPA's reason for denying her participation in the time-intensive leadership program was untrue.

This Court grants summary judgment in favor of the EPA on Dabner's race and sex discrimination claims.

### 2. *Retaliation*

The EPA also asserts that this Court should grant summary judgment on Dabner's claim of retaliatory adverse action in violation of Title VII because even if any of her alleged adverse actions qualify, she cannot demonstrate the but-for causal link between her EEO activity and those actions. For reasons already addressed elsewhere in this opinion, Dabner is unable to survive summary judgment on her retaliation claim. Dabner alleges that she was retaliated against for her prior EEO activity. However, she cannot establish a prima facie case of retaliation. The undisputed facts show that she was not subject to an adverse employment action. The EPA issued a performance expectations memorandum to Dabner and denied her participation in a leadership program based on her backlog of required work. Likewise, Dabner has not demonstrated that by not receiving the section chief promotion she suffered any material changes to her employment. Additionally, Dabner cannot show that she was meeting the EPA's legitimate employment expectations and has not identified any similarly situated individuals that were treated more favorably. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (setting forth the requirements for establishing a prima facie case of retaliation). Therefore, this Court grants summary judgment in favor of EPA on this issue.

**Conclusion**

Based on the foregoing, no genuine issue of material fact exists as to any of Dabner's claims, and the EPA is entitled to judgment as a matter of law. The Court grants the EPA's motion for summary judgment [74] and dismisses Dabner's complaint. Civil case terminated.

IT IS SO ORDERED.

Date: 3/18/2019

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge